**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3265
_____

ZHAO MEI LIN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-369-049)
Immigration Judge:  Honorable Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 22, 2012

Before:  SMITH, HARDIMAN and STAPLETON , Circuit Judges

(Opinion filed: February 24, 2012)
_____

OPINION
_____

PER CURIAM

        Zhao Mei Lin petitions for review of the Board of Immigration Appeals's ("BIA")

final order of removal.  For the reasons that follow, we will deny the petition in part and

1

dismiss it in part.

I.

Lin, a native and citizen of the People's Republic of China, entered the United States on or about January 11, 2001. On January 3, 2002, he filed an affirmative application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming that family planning officials in China had subjected his wife to a forced abortion and, later, forced sterilization. Shortly after Lin filed that application, the former Immigration and Naturalization Service initiated removal proceedings against him, charging him with being removable for having entered the United States without valid entry documents. At the initial hearing before Immigration Judge ("IJ") Jeffrey S. Chase in New York, New York, Lin conceded the charge of removability.

Shortly after relocating to Philadelphia, Pennsylvania, in early 2008, Lin successfully moved to transfer his removal proceedings to the immigration court in Philadelphia. At the initial hearing before IJ Rosalind K. Malloy (hereinafter "the IJ") in Philadelphia, Lin changed the basis for his application,[1] asserting that his claim was now "based on his association with an underground church in China and the fact that he is a

---

[1] At that hearing, Lin's counsel stated that Lin was no longer eligible for relief based on his original claim, and alluded to Lin v. U.S. Dep't of Justice, 494 F.3d 296 (2d Cir. 2007) (en banc). In that case (which involved a different alien with the same name), the United States Courts of Appeals for the Second Circuit held that the Immigration and Nationality Act, as amended, "does not provide that a spouse . . . of someone who has been forced to undergo, or is threatened with, an abortion or sterilization is automatically eligible for 'refugee' status." Id. at 309. In February 2009, our Court, sitting en banc, adopted the Second Circuit's analysis. See Lin-Zheng v. Att'y Gen. of the U.S., 557 F.3d 147, 157 (3d Cir. 2009) (en banc).

2

practicing Christian here in the United States." (A.R. at 164.)  In May 2009, the IJ held a hearing on the merits of Lin's amended application.  Lin testified that, after his wife was sterilized in 2000, he began attending an "underground" Christian church in China.[2] After Lin arrived in the United States, he began attending a Christian church in Brooklyn, New York.  He continued to attend that Brooklyn church even after relocating to Philadelphia.  Lin averred that if he were to return to China, he would again attend an underground church and might also hand out flyers "to promote the love [of] Jesus Christ . . . and to ask other people to join us."  (Id. at 200-01.)

Following Lin's testimony, the IJ denied his application.  With respect to Lin's asylum claim, the IJ found Lin's testimony lacking in credibility.  The IJ also found that, even if Lin's testimony were credible, there was "absolutely no evidence" that he was persecuted in the past, and his claim of future harm was "purely speculative" and "baseless."  (Id. at 126-27.)  The IJ concluded that, because Lin had not met the standard for asylum, he necessarily could not meet the standard for withholding of removal.  As for Lin's CAT claim, the IJ concluded that he had "failed to establish that anyone would be interested in torturing him for any reason upon return to China."  (Id. at 128.)

Lin appealed the IJ's decision to the BIA.  In July 2011, the BIA dismissed the appeal.  With respect to Lin's asylum claim, the BIA concluded that the IJ's adverse credibility finding was not clearly erroneous, and that Lin "has not sufficiently corroborated his claim that he is a practicing Christian or attended an underground church

---

[2] Lin testified that the church's meetings took place in a co-worker's home.

in China." (Id. at 4.) The BIA also agreed with the IJ that Lin's fear of future persecution was speculative:

> Although [Lin] contends that he attended an underground church in 2000 and will be persecuted because of this, he has not submitted persuasive evidence that the authorities are looking for him. He also contends that he will resume going to an underground church upon returning to China, and will be persecuted because of this. The State Department's Country Reports on Human Rights Practices for China, 2007 (Country Reports), and International Religious Freedom Report for China, 2007 (Religious Report) show detention and harassment of unregistered Protestant groups. However, the Country Reports and Religious Report show that the authorities handle "house churches" differently in different regions. [Lin] has not adequately established that he will be persecuted if he attends an underground church in his region.
>
> [Lin] contends that he might start passing out flyers praising Christianity upon returning to China, but this is an equivocal statement. Further, he testified that he did not pass out flyers when he was previously in China because he was too busy working. Further, [he] did not provide evidence to corroborate that passing out flyers, or similar activity, objectively establishes a well-founded fear of persecution.

(Id. (footnote and citations omitted).) The BIA also agreed with the IJ's rejection of Lin's claims for withholding of removal and CAT relief.

Lin now seeks review of the BIA's decision.

## II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the agency's factual findings, which include its finding as to whether an alien has demonstrated a well-founded fear of future persecution, for

4

substantial evidence. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Under this deferential standard of review, we may not disturb those findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Where, as here, an alien seeking asylum does not allege past persecution, he must establish that he has a well-founded fear of future persecution. See Chavarria, 446 F.3d at 515-16 (citing 8 U.S.C. § 1101(a)(42)(A)). To make this showing, he must "demonstrate a subjective fear that is supported by objective evidence that persecution is a reasonable possibility." Yu v. Att'y Gen. of the U.S., 513 F.3d 346, 348 (3d Cir. 2008) (internal quotation marks and citation omitted). The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).

The substantial evidence in this case supports the agency's finding that Lin's fear of future persecution was too speculative to be well-founded.[3] The U.S. State

---

[3] Since we conclude that the record does not compel a finding of a well-founded fear of future persecution, we need not address the parties' arguments concerning the agency's adverse credibility and lack of corroboration findings. We do note, however, that the Government's claim that we are foreclosed from reviewing those issues is meritless. Even if we were to agree with the Government that Lin failed to properly present those issues to the BIA, we would nonetheless have jurisdiction to review them because the BIA addressed them in its decision. See Lin v. Att'y Gen. of the U.S., 543 F.3d 114, 122-24 (3d Cir. 2008) (concluding that, although the petitioner had failed to challenge the IJ's adverse credibility determination in his appeal to the BIA, this Court nonetheless had jurisdiction to review that issue because the BIA had considered the issue sua sponte).

Department's 2007 International Religious Freedom Report for China, which was part of the record and relied upon by the BIA, indicates that the treatment of unregistered religious groups "varied significantly from region to region." (A.R. at 496.) Although Lin highlights the report's finding that the Chinese government closed churches in Fujian Province — the province in which he was born — he has not pointed to any additional evidence from that province, let alone shown that the record compels a finding that there is a reasonable possibility that he would be singled out for persecution if he returned there. Additionally, Lin has not indicated which underground church he would join if he returned to China, and his testimony that "maybe one day I will start to give out these flyers," (id. at 201), is simply too speculative to bolster his claim. To the extent he argues that (1) there is a pattern or practice of persecution in China against Christians, and (2) "the IJ failed to consider whether the prospect of forced clandestine practice of his faith would constitute persecution" (Pet'r's Br. 29 (internal quotation marks and citation omitted)), we lack jurisdiction to consider these arguments because he failed to raise them on appeal to the BIA. See 8 U.S.C. § 1252(d)(1); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) (stating that "an alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim").

Since Lin has not satisfied the standard for asylum, he cannot meet the higher standard for withholding of removal. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003). Nor is he entitled to relief on his CAT claim, for the record does not compel a

6

finding that he would likely be tortured by, or with the acquiescence of, the Chinese government if removed to China.[4]  See Shehu v. Att'y Gen. of the U.S., 482 F.3d 652, 658 (3d Cir. 2007) (reciting standard for CAT relief).

In light of the above, Lin's petition will be denied in part and dismissed in part.

---

[4] Given that a challenge to the denial of Lin's CAT claim clearly lacks merit, we need not resolve the question of whether Lin sufficiently preserved such a challenge in his brief.